And that is the case of Cotton v. Bourland. We have here Mr. Paul Storlund, Mark A. Petland, and John Bluebell. We have here Mr. Paul Storlund, Mark A. Petland, John Bluebell, Mark A. Petland, and John Bluebell. We have here Mr. Paul Storlund, Mark A. Petland, John Bluebell, Mark A. Petland, John Bluebell, Mark A. Petland, and John Bluebell. Now, factually what occurred was this. The children moved in on September the maybe 10th or August, late August of 2006 in the school district of this school, Alton District 11. They lived at 2024 Booker, and they had to walk to school. Now, the walking to school required them, now this may be a question of fact, over a mile and a half. Now we had an expert who testified, but that's not the issue here today. That is not the issue here. The questions of fact are not an issue here today. Whether it was a mile and a half or under a mile and a half, the issue here today is the fact that our lawsuit was dismissed on the basis of this order. And let me review this order with you. Now, while the kids were walking to school, they had to go a route into the back of the school. That would be on St. Elizabeth or Elizabeth Street, excuse me. And they had to cross Pot Juan or Pot Juan. Now, during the course of their movement towards the school, they were struck by an automobile driven by Crystal Borland. Her husband owned the automobile, and of course there was negligent entrustment or questions of negligent entrustment, drinking, drugs, alcohol on her part. But the sum total is that's not an issue before this court either. The whole issue before this court is merely this. I will recite the statute to you. We filed a multi-count complaint, and early on when we filed it, we filed in negligence, and we filed in goal for misconduct. And early on, the school board filed a 216 motion to dismiss our negligent counts, which was granted by Judge Stack August the 20th, 2008. And we proceeded on, and I think Judge Stack in that, well of course I won't tell you what Judge Stack said, because he's a great guy. But what he said is the willful counts will remain. Now, as I said, this is not a question before this court, respectfully, of judging the facts of this case, because I think it's clearly a question that the judge, Judge Callis, in her summary judgment, in the motion for summary judgment, ruled on two issues of law in this case. Number one, she ruled that the court grants the defendant's motion based on the language in 105 ILCS 5-29-3 that no action shall lie against the school board. That's point one. And the second is that the court further concludes that the defendant is immune from tort immunity by virtue of 745 ILCS 10-2-201, the tort immunity statute which applies to the local school district. Now, let me go from there and say this. The statute reads, and I'm going to paraphrase it, it's 105 ILCS 5-29-3. And let me just paraphrase it, it's a pretty long statute, but near the end of the first paragraph it says that the school district, the school board, community consolidated districts, shall provide school, provide transportation. Now, the very, very important part of this statute is the language. You know, shall. Shall. That's what they say. The statute says shall. Mandatory shall. Shall provide free transportation for pupils residing at a distance one and a half miles more from the school to which they are designated to attend. And this one and a half miles is normally a position of where they reside, which is 20-24 Booker in this case, and where they are normally unloaded. That's the measuring distance. The school board shall provide transportation. You said that there was issues of material fact. Well, what I'm saying is... Doesn't it matter whether or not it's a mile and a half or less? But that was never decided by Judge Catliss. Nobody's ever decided that. I'm just saying that that's part of the appellee's argument in this case, but it's never been decided. If the motion for summary judgment was based upon the fact that there were no material facts that the plaintiff could prove that the distance was farther than a mile and a half, we'd be fine. I mean, they'd be fine here, and I wouldn't be standing up and arguing this situation. I'm saying... Do you follow what I'm saying? Yes. Okay. I'm saying that that was not brought up in the summary judgment. We had an expert, Mark Ezra, which the appellee criticizes in his brief, and I don't think there's an issue with respect to that. Let me continue further. No finding of any trial court was ever found that the distance was less or more than a mile and a half. Does the court follow what I'm trying to say? Okay. Well, his deposition is quoted on page 5 of the appellee's brief, says, Ezra's exhibit number 2 that shows the route according to Google Maps was 1.2 miles, correct? Mr. Erza, answer, yes. I know, but that was never presented to the trial judge. That was never presented to the trial judge in the argument for motion for summary judgment. I mean, there's more issues than that, in fact. But I'm saying my opinion is based upon the hazard's presence, not on the total mileage. That seems to be the import of his testimony was that let's focus on the exception to the 1.5-mile requirement. Okay. I love the court, but I'm not willing to concede that situation. I'm just reading what's in... I know, but I'm saying this should not be taken into consideration by this court because there's two issues which the order states. Now... Well, how did that get into the record, then? Yeah. It's part of the deposition. It said Mark Erza gave testimony on February 16, 2009 and February 4, 2010. I assume he gave testimony... Well, but I'm saying that there... I'm not trying to be obstinate. I'm just saying that there was no findings of fact by the trial judge, and that's why... Mr. Storm, are you saying that the court never heard or never had the opportunity to hear or consider this testimony that we're reading in the briefs? That's what I'm saying. That's exactly what I'm saying. So the court never had an opportunity to make any kind of determination as to whether or not it was greater or less than a mile and a half, so whether or not one statute would apply versus the other? That's exactly what I'm saying. Well, then I'm going to ask a question here. What the heck is it doing in the brief? I didn't put it in the brief. Okay. I didn't put it in my brief. I didn't argue any facts in my brief. I didn't argue any questions of fact. Now, there are other problems that I've got, too, factually. Whether or not there was enough notice to the school that just moved in, whether or not they had done a survey, whether there were any other routes, whether there was public transportation available. I've got a lot of fact problems. But that's something that a trial court should decide because it wasn't dismissed on that basis. Do you follow what I'm saying? You're just saying it was dismissed on the basis that the court felt that there was absolute immunity no matter what the distance was? And also that the statute, as we go along, there's two prongs to the statute. Number one, the shall says if it's over a mile and a half, the school board shall. If it's under a mile and a half, they are to consider the dangers to the student. And the dangers are all set forward in this school safety busing, IDOT situation, which assesses points for walking along the road without a sidewalk, crossing railroad tracks, walking where there are hazards. Now, the third thing, which is the all-damning thing for me, as I understand it, in the lower court's ruling, is the court says that the language is, and this is at the bottom of page 11 of my brief, it says no action, no action, shall lie against the school board, state superintendent of education, or the Illinois Department of Transportation for decisions made according to this section. Now, which means they have a really well-crafted statute, Euston Generous statute here, well-crafted, and saying what shall happen, and the alternative, less than a mile and a half, and they're saying, but you can't do anything about it, folks, can't do anything about it. Now, I'm saying that that's malarkey. I'm saying how can you provide this ministerial statute with respect to the first part and second part, and then say there's no cause of action for you? That's what the judge is saying. If you read the order very clearly, the judge is saying no action shall lie, and that's one of the reasons he threw me out. Was there a written petition from the parent or guardian? No, there was not. Is that not a prerequisite before the school board can exercise its discretion in providing bus service of less than a mile and a half? Less than a mile and a half. Right. Yeah. Is that a prerequisite according to the statute? It could very well be, and I admitted to you when I began my argument that that's a factual question I have to get over, but it's not part of this ruling of this order which has brought me here to this court. Was that before the trial court? No, that's not before the trial court. What was before the trial court? What was before, that no action shall lie, the motion, the motion, the first motion to dismiss before Judge Stack, 619, mentioned nothing about no action shall lie. Now, the second motion, the summary judgment motion which was decided, which brings me here, it was April the 10th, 2010, is the one, is the order here. I have not seen the order. Okay. That would have been helpful. Well, I recited the order here on page 12 of my brief. I say here that the court merely stated in the order of summary judgment, this is halfway down the page, Judge Chapman, the court merely stated in order of summary judgment that no action shall lie against the school board for any alleged violation of 105.ILCS 5-29.3, which simplistically means that the statute absolutely has no remedy where there is mandatory language. And that's when I cite all my cases here showing mandamuses that heretofore have been filed against school districts. There's Postera v. Pena Community School District. There's Randolph v. School District 201 with rulings where parents have filed these mandamuses because they wouldn't transport their kids. And they filed it against the school district to force them to do these things. So these cases are all a matter of record. They're all a matter of record. And one of the other ones is People v. Cantu where the people said, well, even though we live on a dead-end street, you've still got to pick it up because we're more – no, excuse me, Randolph v. School District 201. All these lawsuits I presented to Judge Callas showing that, in fact, lawsuits had been filed against the school district. And that is my only argument for this disclaimer in the statute. There's no case law on this. If you do annotations on the statute and you do searches on the statute, you're not going to find a case law interpreting this statute. You're not going to. You're not. It's just not there. And second, it's not there. And you folks out here are going to be in court's first impression on what to do with this statute. Now, let me argue the immunity situation. Well, I guess the judge was distinguishing mandamus from – obviously from – I have a copy of this letter here, which we – Because she does list, as you say, that – She was not impressed by my cases. She was definitely not impressed with my cases. No, she was not impressed with them. I want to tell you that. I don't want to speak out of school, but she was not impressed with my cases. Now, I want to move on to the second, third point, immunity. Immunity which is afforded to a school district. And that immunity is codged in Statute 745, ILCS 10.2.201. Now, this is the second prong of the reasons she dismissed this case on motion for summary judgment, because she said that the school district was absolutely immune. Now, the first thing I want to argue in derogation of this order is the fact that there is a very scholarly treatise on ministerium and discretionary acts in Snyder v. Curran, which you – this court has cited many times. And also, there's an interesting case of Bonnell, B-O-N-N-L, versus the Regional Board of School Trustees, which I cited in my brief, which Judge Welch decided out of this district in March 14, 1994, dealing with the question of ministerial as opposed to discretionary. Now, this is a very interesting case, and it's the only case that I've seen where this issue has really been taken lightly. Here are the facts of this case. Now, in Madison County, Bonnell, I mean the school district, sold a school, the Lincoln School, to Bonnell. But they didn't tell him it had asbestos in it. They didn't tell him it was loaded with asbestos. And the case was, at the trial level, was dismissed on the basis of the fact that the school, 619, Range 619, motioned that there was absolutely immunity, and the trial court went for that. So they appealed it, and this appellate court, Judge Welch, discussed the difference between the sale and carrying out the sale. The sale was discretionary. In other words, who buys this place is discretionary. How do you pay for it? With notes, with loans, discretionary. But carrying out the sale, as we dovetail this with our case, carrying out the sale is ministerial and therefore no tort immunity. That's what the case is. It says those decisions that amount to obedience, obedience of an ordinance, is ministerial and there's no tort immunity. Now, what's clearer than that? Now, are you supposed to, in Black's Law Dictionary, it clearly sets out what shall means. If Black's Law Dictionary says that shall means that it must be obeyed, or there's a mandatory requirement, Black's Law Dictionary says that, shall means, bingo. So if it means that the ordinance must be followed, the language, then it's a ministerial act that they're asking the school district to do, ergo, no tort immunity. Now, the third point I want to argue is this. Judge Stack dismissed my negligence. Can't you do a ministerial act negligently? Aren't you confusing ministerial acts and Ma'am Damas? No. I mean, you're talking about a duty. You lost me there, sir. When you're talking about a ministerial act as opposed to a discretionary act, has something to do with the tort immunity. You have to explain it to me. All right. Okay. Now, the act, all right, let's take this case, which explains it very clearly. An act that adopts general principle that local government units are liable in tort, but the act limits this liability with an extensive list of immunities based on specific governmental functions. And then it says discretionary acts are those which require personal deliberation. Personal deliberation. While ministerial acts are those amounting to the performance of a task that is ordered. You see, channel is a task that is ordered. It's not discretionary. Maybe the less than one point half mile. I thought the distinction was between willful and wanton acts and negligent acts.  There's two. I mean, Schneider versus Kearns and this case. Okay. Also, let me say that I have 21 to 27 counts in willful wanton misconduct by way of Murray versus, you know, the Chicago trampoline case where Judge Kilbride said that tort immunity does not fix the willful wanton acts. 201 does not apply to willful wanton misconduct. Okay. I'll read your cases later. Thank you, sir. And he's going to say, well, that only applies to hazardous recreational activity, but it doesn't. Okay. Thank you very much. Well, you have the opportunity for rebuttal. Okay. You can go back. Mr. Bruegel, you may proceed. May it please the Court? Yes. Counsel? Yes. Let me begin by starting at the beginning. We're here on appeal of a grant of my client, all the school districts, motion for summary judgment. The standard on appeal for de novo review. Now, I do want to go back. Can you clarify for us what was and wasn't before the Court on that day? Yes, I have. And plaintiff's expert, Mark Ezra, his deposition was made part of the record by attachment as an exhibit to our motion for summary judgment and then was quoted in our memorandum of support there. And you can see that on page C545 of the record and C596 of the record, respectively. Furthermore, the plaintiff's interrogatories in which they state that they filed no written petition for review of the route to school was also made part of our motion for summary judgment at the trial court level. That's on page C577 of the record. Any counterappetites to either of those two issues? No. In fact, Your Honor, let me see if I can clear up some of the confusion I think has gone on this morning. We're here on three basic issues. They're two under school code section 29.3, whether the school transportation is mandatory or not, or permissive, and then whether there is immunity under section 2201 of the TOR Immunity Act. Now, to start off with the school code, the statute clearly states if it's 1.5 miles or greater, the school district must provide transportation. However, what's important to note is that the statute specifically says, and I will quote, such distance shall be measured by determining the shortest distance on normally traveled roads or streets. The issue is now what was the actual route that the children took? The issue is what is the shortest route that they could have taken using normally traveled streets? I think evidence that was before the trial court is clear and uncontroverted, and as the court pointed out, even mentioned by the plaintiff's own expert. First, we'll look at the testimony of Chris Norman, who his deposition was made part of the record by attachment to our summary judgment motion. He was an assistant principal in the old school district at the time, and he is the liaison for the district for the transportation services. He is the person who negotiates and deals with the bus company. After the accident, Mr. Norman got in his car at the plaintiff's residence and drove to where they would go into the front of the school. He drove around the back of the school and parked in a parking lot. He measured it by his testimony at one mile. Furthermore, the plaintiff's own expert, Mark Ezra, had a couple of different standards, but what's clear from the record is that either using Google Satellite or Google Maps, he got a distance of either 1.29 miles or 1.2 miles. Furthermore, Mr. Ezra's deposition was conducted in two parts. Because during the first one, he did not review the depositions of the plaintiffs in the case. And during their depositions, they testified to the route that they took. So, Mr. Ezra's testimony about the mileage that you just stated, was that based on what you consider the statute says as the criteria from beginning to end? I believe so. He measured it using two different methods from where the plaintiffs resided to the school. Using normally traveled traffic, it wasn't as deprofiled as it was through the blocks in the street's vault. Furthermore, after he reviewed the deposition of the plaintiffs, he produced a Google Maps map and also a report in the form of a letter. And this was also attached as part of our summary judgment motion. In a March 6th letter to plaintiff's counsel, he states that he reviewed the depositions and states, from these depositions, we have extracted the route taken by the children to go to school. This route is attached to this letter as Exhibit B and is outlined on a Google Earth image. The distance of the route as shown in Exhibit B is 0.85 miles when measured using Google Earth. And that is page C-639 of the record. So I don't admire the actual route the children took because that's not the issue. The issue is, what is the shortest route? And there was absolutely no question of fact at the trial court level that the shortest route was less than 1.5 miles. Whether the route the kids actually took or not took, it's clear from plaintiff's own admission, from the office school district standpoint, the route was less than 1.5 miles. Therefore, under Section 29.3, there was no mandatory action. There was no ministerial action of route being required to provide busing. Now the second part of that statute states that a school board on written petition of the parent or guardian of a pupil shall conduct a study and make findings which the Department of Transportation shall review and approve or disapprove as provided in this section. As Your Honor already pointed out, and as counsel had already stated, there was no written petition. It is a determining factor. It's a condition precedent. There was no written petition filed at the office school district. And Mr. Norman in his deposition testified as such. That as the liaison for the bus company for the district, no one had contacted him. And both in the answers to interrogatories, and which are part of the record as C-577 to C-584, and in all plaintiff's response to requests to admit, they admitted no written request was made. And that's in the record C-709 to C-717. The only reason I'm citing parts of the record is just to be clear that certain things are in the record and were before the trial court. So the act of the school district even starting to conduct a review could not have been triggered. So they could undertake any kind of analysis. It was clear that there was no written report or no written request made to the school district. Now that statute, section 2993, states that when the school district and the Department of Transportation undertakes that review to determine if there are hazards present, or to go into what Mr. Sorkin was talking about, of assigning points to different hazards along the route, once we even get that far, which we have not in this case. The Illinois General Assembly had made it clear that when that determination is made, no action shall apply. That action is discretionary. Now Mr. Sorkin cites some cases, which he says mandamus was granted, people brought lawsuits under the statute, and how come all those cases can be out there if that's really what it means. And what I cite to the court is all of those cases, every single one of them, was on the pre-1980 version of that statute. That statute was amended, effective, I believe in January of 1981, and that sentence, no action shall lie, was inserted at that time. All of Mr. Sorkin's cases came before that. That's why those cases were allowed to be brought, even though those cases didn't directly address whether those actions actually could lie. Now, my final point will be immunity under the tort immunity statute, and that is 745 ILCS, 10-2-201. Now, as the court told the way that statute involves a discretionary act on the part of the school district. And Mr. Sorkin was talking about the Bonnell case. Bonnell case is not anywhere near on. That case dealt with whether the school was required to disclose the presence of asbestos on the property, and that that was something that was required of the school district. It's not anywhere near what this case is about. What this case is about is more directly related to a second district case that came out in 1999. This is the case DMXRLCH versus the National School Bus Service. That's at 305 Illinois Appellate 3rd, 735. Now, what happened in that case is that a student of the special school district was assigned to a particular bus to be driven to school. Special school district bus comes around, picks up the student. Now, what happened then is another student on that bus assaulted. And this is a student that the school district knew had a copy of the assault form, and the student claiming the school district was negligent and alleged willful mothmaps in that case against the school, saying that the school never should have put the injured student on the bus with the assailant. But what the court found, the school district obviously claimed that they had tort immunity. What the school found, or what the court found, was that the school is required to provide, and I believe that was a case where the school was required to provide transportation because it was more than a mile and a half. The court held the statute that commands the school to provide transportation offers virtually no guidance as to how to do it. Instead, the school is left to determine how best to comply with the statute given its available resources and unique circumstances. And it held that the school district was under no legal mandate to perform its duty in a prescribed manner. It had to weigh various options and find on its own the maximally efficient arrangement. And the opinion goes into several factors that go into that analysis. Contrary to claim and suggestion, we do not perceive that the process by which a school decides which student to assign to each bus is a simple one. The school must presumably consider a variety of factors, such as the number of available buses and drivers, the distance each bus would travel, the number of students who live in each surrounding neighborhood, the capacity of each bus, local traffic patterns, and so on. That is the second district case. That is very nearly square with the issue here. Was that cited? That cite? Was that cited in your brief? I believe so. I believe it is cited in Mr. Storm's brief. Okay. It was not in mine. Let me... On page 14 of the appellant's brief, it is the last cite right before that subsection C. It's DMXRLCH versus the National School Bus Service, 305 Illinois Appellate 3rd, 735. It's very nearly square with the issues here. Even in this case, because the school district had the duty to provide transportation, which it did not. But even if it had, Illinois case law says that is a discretionary act. Yes, it must provide transportation. But the manner in which it doesn't is an act of discretion. Now, in this case, we're even one step removed from that. In this case, the Elder School District was not required to provide transportation by the admission of the distance from plaintiff's own expert, the plaintiffs, and from the Elder School District employee, Chris Norman. And just to conclude here, Mr. Norman raised the issue that Section 29.3 does not provide any violation of 4A law. And therefore, this court must give it some relief because there we have a mandatory statute in which there is no redress. That's untrue. Clearly, that statute requires the school district to do something in one case, gives it discretion to do something in another case, provides immunity for it on discretionary acts, which dovetails with the tort immunity statute. If the plaintiffs had lived clearly no closer than five miles from the school, the school district would have had to provide a bus. And if it didn't, then the plaintiffs certainly would have redressed it to court. That is not the case here. That is not the facts here. Mr. Norman doesn't want to argue the facts because the facts are not on his side. In this case, the plaintiffs, the shortest route, clearly, uncontroverted, less than 1.5 miles. There was no mandatory requirement to provide a bus. The district could have undertaken a discretionary review of the route to determine if buses should be made available, but as plaintiffs admitted, there was no request to do so. In fact, even in Mr. Norman's brief, in the facts, on page 7, these students had recently moved into the school district a day or two before the accident. The school district had no warning. They lived too close to the school for mandatory buses. They moved in. Two days later, they are hit by the school. In this situation, the district could not have acted, even if it tried to undertake the review that is protected by the statute. They would have had a day or two, even if given proper notice, which they were not. What should have happened here? What should have happened is the parents of these children should have contacted the school so they could make a determination whether they were at or above or below 1.5 miles. If they were below, the parents should have filed a written request, and the school could have undertaken that analysis. What actually happened here was that there was no written request for transportation. The school district never had the opportunity to review the record. The children were struck on their way to school by a woman who had a long history of drug problems and a criminal record, and her deposition is part of the record. Under these uncontroverted facts, there is no way that the school district could have done anything. The school district was not negligent. It was not willful. And because we are here on a de novo review of the motion for summary judgment order, based on the facts of the case and the clear law on the way, I'm asking this court to affirm Judge Ellis' decision. Did the complaint allege Whirlpool-Watkins at all? In this case? Yes. I believe so. Thank you, Mr. Whirlpool. Thank you very much. Mr. Stormont, do you have any rebuttals? Yes, I'm very grateful. What John is trying to do here is make Whirlpool a trial court. What Judge Ellis should have done. I mean, you're not a trial court. This is an appellate court. This is an appellate court that reviews orders of dismissal of the trial court de novo. That's what this function is today. And I, if anything is in here about the fact that we did not make a case, if any language is in here about the fact that there is no language in here that there is no genuine issue of material fact, and that's the reason the summary judgment was granted under the statute. Nothing in there. Mr. Wohl drafted this order. He went up to Judge Callis and said, look, Judge Callis, it says here that an action can't be brought. No action can be brought. And there's tarred immunity here. Nothing about whether or not the folks called the school and told them that they'd moved in or what Mark Ezra said about the distance or all of the hazards and all those problems. That wasn't argued. It's not in the order. I would say he's correct. If there was anything in this order that said there's no material issue of fact, that I'm wrong. There is no, nothing in this order about that. It's merely two questions. Can I bring an action because of that language? And is there tarred immunity because of willful want and because of ministerial acts? That's all that this court has to decide respectfully saying that. Now, I cited this DMN, DM versus National School Bus Service. This is a young girl that was on the bus, and she was raped or abused or something, and her parents brought action against the school board. And they found that monitoring this bus and who you put on this bus, whether you put people, kids that have mental problems or whether they're all that, the school, that's a discretionary thing. And truly, it's discretionary. And if it is discretionary, there's tarred immunity. There's tarred immunity. But there's no tarred immunity for shall or you must do this or you must do that. There's no tarred immunity for that. And that case of the ass justice case clearly states what it is. And Schneider versus Curran is three pages of the differences between ministerial and discretionary acts. And because the order says what it does, it should go back to the trial court to make determinations of fact. If I'm blown out of there because I didn't follow some of the requirements under the statute, that's something the trial court should decide. That's something a trier of fact should decide, not an issue of law. Thank you very much. Thank you. Thank you both for your briefs and arguments, and we will take the matter into court.